**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRANCH METRICS, INC.,<br>Plaintiff,<br>vs.<br>GOOGLE LLC,<br>Defendant. | Case No. 3:26-cv-07544-RFL<br><br>**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**<br><br>Date: September 9, 2026<br>Time: 10:00 AM<br>Place: Via Zoom<br><br>Judge: Hon. Rita F. Lin |

Plaintiff Branch Metrics, Inc. ("Branch") and Defendant Google LLC ("Google") (collectively, the "Parties") submit this Joint Case Management Statement and [Proposed] Order pursuant to Civil Local Rule 16-9 and the Court's Standing Order.

## I. Jurisdiction and Service

This case was filed in the United States District Court for the Eastern District of Texas on January 31, 2025. It was transferred to this Court on July 16, 2026.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1337, because the action arises under the federal antitrust laws: Section 1 and Section 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26. The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the California and Texas state law claims[1] because they are so closely related to the federal claims that they form part of the same case or controversy.

Venue is proper in this District under 28 U.S.C. § 1391 because Google is headquartered in Mountain View, California.

There are no disputes regarding jurisdiction or service.

[1] The parties will confer over whether Branch intends to continue to pursue its claims under Texas state law.

## II. <u>Facts</u>

### A. Branch's Statement

Branch developed innovative search technology—known as "Discovery" or "Discovery Search"—to allow Android mobile device users to search content within Android applications, discover and access applications, and engage with advertising content. Dkt. No. 1 ¶¶ 10, 45-50. Historically, consumers accessed digital content on a desktop or laptop computer and while using web-based search. *Id*. ¶¶ 13-14. But consumers have shifted to accessing digital content on phones and other mobile devices and now spend 90% of their time on mobile devices on apps. *Id*. Branch created Discovery to provide search functionality in the app sphere and hence align with this major shift in consumer behavior and demand for app-based content. *Id*.

Contrary to the suggestion in Google's statement below, Google's internal documents show that Google viewed Branch's technology as a significant competitive risk in multiple respects, including to Google's search business. Google recognized Branch as (1) a competitive threat to Google's dominance in traditional web-based search by diverting searches from mobile device users (and advertisers) from web-based search towards application-content search; (2) a competing technology to meet demand for app-search services; a (3) competing channel for the discovery and distribution of Android applications, and (4) thus a threat to Google's monopoly on Android application distribution, through the Google Play Store; and an alternative outlet for advertisers to follow shifting user demand, threatening Google's search-based and application store advertising profits. *Id*. ¶¶ 16, 86-94, 118-20, 139.

Confronted with these competitive pressures, Google intentionally targeted Branch and exploited Google's monopoly power in the markets for general search services, Android application distribution, and Android application search services to foreclose Branch from getting distribution. *Id*. ¶¶ 17-33. Google used an arsenal of anticompetitive practices to prevent competition and exclude Branch. For example, when licensing its dominant applications or "apps" (including Google Search and the Google Play Store) to Android mobile device manufacturers and distributors, Google conditioned its license on those applications being pre-installed in prominent, undeletable locations on the device home screens; required distributors to set Google as the

exclusive default search engine for all search access points on the devices; and expressly prohibited distributors from preinstalling any non-Google search products on Android devices, including Branch's Discovery. *Id.* ¶¶ 141-160. Google also used its monopoly power to coerce distributors into these anticompetitive agreements by paying billions of dollars of its monopoly profits each year to Android distributors to secure default status for its general search engine and app store and to contractually prevent distributors from dealing with Google's competitors, including Branch. *Id.* ¶¶ 161-194. Those exclusive dealing arrangements harmed competition, innovation, choice, and quality in the antitrust markets at issue—and directly injured Branch. *Id.* ¶¶ 214-242.

Branch felt the brunt of those illegal exclusive dealing arrangements. For example, Google's revenue sharing agreements ("RSAs") contain an "alternative search services" clause that "prohibits Google's Android partners from preloading rival search engines." *United States v. Google LLC*, 747 F. Supp. 3d at 151. After "Samsung sought to integrate Branch's deep-linking technology onto its devices," Google revised its revenue sharing agreements to make sure that clause covered Branch's Discovery product. *Id.* at 104 ("This change resulted from Samsung's preinstallation of an on-device search technology from Branch."). That change worked as intended, preventing Samsung from loading a web-enabled version of Discovery onto its phones. And AT&T "decided not to partner with Branch after Google refused to clarify whether such a partnership would run afoul of the RSA." *Id.* at 105.

Two federal courts have addressed the core Google anticompetitive conduct at issue in this case and found Google liable (after trials) for violating the antitrust laws. *See U.S. v. Google LLC*, No. 20-cv-03010-APM (D.D.C.) and *Epic Games, Inc. v. Google LLC*, No. 3:20-cv-05671-JD (N.D. Cal.). *See* Dkt. No. 1 ¶¶ 19, 29, 75, 78, 80, 84, 108, 116, 138, 175, 188-89. In *U.S. v. Google*, 747 F. Supp. 3d 1, 107 (D.D.C. 2024), for example, the Court held that Google violated Section 2 of the Sherman Act by unlawfully maintaining monopoly power in the general search services market, including by use of the same exclusive distribution and revenue sharing agreements. Branch testified at the DOJ's request, and the Court found that Google specifically amended its exclusionary agreements to block mobile device makers from installing any "on-device search service" that "is similar to Google Search," because Samsung began preinstalling Branch's

Discovery technology. *Id*. at 104. The Court found that this amendment resulted in a "chilling effect on distribution partners' consideration of Branch." *Id.* at 104-05, 170. And in *Epic Games*, the jury found that Google willfully acquired or maintained monopoly power in the Android app distribution market through anticompetitive conduct. *See* ECF No. 984 at 16. Branch alleges that Google exploited this same monopoly power by tying distribution of its Android app distribution product to a restriction on use of competing search technology. *See* Branch Complaint (Dkt. 1) at ¶¶ 17, 109-16, 117-30, 255-264 (Count Two), 265-74 (Count Three).

Branch asserts multiple theories of antitrust liability and harm, including (1) unreasonable restraint of trade in each asserted market through use of anticompetitive agreements (e.g., Counts 1, 10, 13); (2) unlawful tying arrangements that tie the distribution of Google's dominant applications (Google Search and Play Store) to exclusions on distribution of competing search technology (e.g., Counts 2, 3, 11, 14); and (3) monopolization and attempted monopolization of the asserted antitrust markets (e.g., Counts 4-9, 12). Branch also asserts that Google interfered with Branch's prospective contractual relationships with Android original equipment manufacturers (OEMs) and carriers, including by amending Google's agreements with those OEMs and carriers to prevent them from integrating Discovery (e.g., Count 15).

### B. Google's Statement

Google Search "is widely recognized as the best [general search engine] available in the United States." *United States v. Google LLC*, 747 F. Supp. 3d 1, 56 (D.D.C. 2024). Google also offers an app store, Google Play, that allows consumers to download or purchase, among other things, mobile applications. Google has achieved excellence in these offerings through decades of research and development, going as far back as the 1990s. *See id.*

Branch is not a search engine; it is a deep-linking attribution company. It alleges that, several years after its founding in 2014, it developed a product called "Discovery Search," which, when integrated on a phone, would allow users to search a repository of app content on their phones. It is not a general search service like Google Search, nor an app store like Google Play. Nevertheless, Branch alleges that Google's agreements to distribute Google Search harmed Branch's ability to distribute its "Discovery Search" product on Android devices.

As it acknowledges above, in bringing this claim, Branch attempts to ride the coattails of two prior cases involving products that Branch does not offer: *U.S. v. Google LLC*, No. 20-cv-03010-APM (D.D.C.) and *Epic Games, Inc. v. Google LLC*, No. 3:20-cv-05671-JD (N.D. Cal.). In *U.S. v. Google*, despite attempting to insert itself into that litigation, the court found that Branch does not participate in the markets at issue, was not a nascent threat to Google in general search, and failed to "show[] potential to become a viable platform substitute for Google." 747 F. Supp. 3d at 169-70. And in *Epic Games*, the plaintiff brought claims relating to app stores and in-app payment processing. Branch—not being an app store—was entirely uninvolved and unrelated to that case. The court that presides over *Epic Games* denied Branch's motion to relate and declined to find it related to the present case. *See* Clerk's Notice, *Epic Games, Inc. v. Google LLC*, No. 3:20-cv-05671-JD (N.D. Cal. July 28, 2026), Dkt. 835.

Realizing this square-peg-in-a-round-hole issue, Branch alleges a new market for "Android Application Search Services," but claims based on this market also suffer from myriad issues, including that it is gerrymandered to tailor only to Branch's alleged "Discovery" product, and is therefore not a plausible market. And Branch pleads Google outside this "market" when it concedes that "[g]eneral search engines that do not provide Android in-app content in response to search queries are not perfect substitutes for Android application search services." Dkt. 1 at ¶ 58. Branch's pleading of this new "market" alongside its alleged general search services market simply underscores the implausibility of its attempts to shoehorn itself into any market in which Google also competes.

Even if Branch could prove a relevant market in which it competes, it cannot show that its admitted business failures were the result of any of the challenged Google conduct. Branch states it had an "innovative search technology," but—despite testing and launching its products on at least one device from all major US phone manufacturers and carriers, and many of the largest phone providers in the world (contrary to its claims about Google's conduct preventing it from doing so)—its product failed to successfully connect with users, advertisers, or phone manufacturers. Indeed, Branch had every chance to succeed, but users disliked the way its product obscured access to their preferred apps, spammed the app drawers in their phones with advertisements (including

for apps they already had downloaded), and detracted from the app drawer functionalities that phone manufacturers already provided. Likewise, advertisers were uninterested in Branch's advertising model, and phone manufacturers were unconvinced by the value proposition of Branch's product even before they were informed about the actual revenue (if any) they could earn by using it. Branch's CEO, who Branch put forth as a witness to testify in *U.S. v. Google*, was terminated, and this lawsuit was launched in an attempt to paper over failures of Branch's product that have nothing to do with Google.

## III. <u>Legal Issues</u>

### A. Branch's Statement

Branch will ask this Court to resolve, as a matter of law, the preclusive effect of findings against Google in *U.S. v. Google LLC*, No. 20-cv-03010-APM (D.D.C.) and *Epic Games, Inc. v. Google LLC*, No. 3:20-cv-05671-JD (N.D. Cal.).

### B. Google's Statement

Google will oppose the motion that Branch anticipates filing, including on the grounds that the court in *U.S. v. Google* held that Branch did not show "potential to become a viable platform substitute for Google," and was not harmed "in the general search services market," 747 F. Supp. 3d at 170, and for the same reasons that Branch was unable to establish the standard for relatedness between its claims and those litigated in *Epic Games.*

## IV. <u>Motions</u>

### A. Pending Motions.

At the time of the stay, there were four discovery-related motions on file, two of which were fully briefed and two where the motion was filed but the opposition was not yet filed. Those motions are: (1) Branch's Motion to Compel Play Store Materials, *see* Dkt. Nos. 72, 73 (fully briefed); (2) Google's Motion to Compel Branch to Respond to ESI Interrogatory No. 4, see Dkt. Nos. 75, 79 (fully briefed); (3) Google's Motion to Strike Branch's Supplemental Disclosures, *see* Dkt. No. 84 (motion filed, no opposition yet filed); and (4) Google's Motion to Compel Inspection of Branch's Discovery Product, *see* Dkt. No. 85 (motion filed, no opposition yet filed).

The parties propose to confer further in an attempt to resolve these four motions, and that

to the extent they are unable to resolve or narrow them, to re-brief the motions pursuant to this Court's discovery dispute procedures, *see* Judge Lin's Standing Order at 5, within two weeks after the September 9, 2026 Case Management Conference.

**B. Resolved Motions.**

The U.S. District Court for the Eastern District of Texas denied Google's motion to dismiss. Dkt. No. 89.

This Court granted Google's administrative motion to relate this case to two other cases pending before the Court: *Arcell v. Google LLC*, No. 22-cv-02499-RFL (N.D. Cal.) and *Crowell v. Google LLC*, No. 25:cv-02775-RFL (N.D. Cal.). Dkt. No. 110.

## V. Amendment of Pleadings

The prior schedule included a January 23, 2026, deadline to amend pleadings. That deadline expired before transfer to this Court. Dkt. No. 49 at 3. The Parties do not request leave to amend the pleadings.

## VI. Evidence Preservation

The Parties stipulated to provisions regarding the production of electronic discovery and preservation of evidence pursuant to the local rules and procedures of the Eastern District of Texas, which were incorporated in that court's order on electronic discovery. *See* Dkt. 62 (July 31, 2025, E-Discovery Order). The Parties also have reviewed this Court's Guidelines Relating to the Discovery of Electronically Stored Information and confirm that they have met and conferred pursuant to Fed. R. Civ. P. 26(f).

## VII. Disclosures

The Parties exchanged Rule 26(a)(1) initial disclosures on June 27, 2025, and each party supplemented its disclosures thereafter. One of the four pending discovery motions referred to *supra* relates to a dispute regarding Plaintiff's initial disclosures.

## VIII. Discovery

***Discovery-Related Orders and Limitations***. The Parties previously stipulated to certain limitations on discovery pursuant to the local rules and procedures of the Eastern District of Texas and those agreements were incorporated in discovery orders issued by that court. *See* Dkt. No. 51

(Discovery Order) and Dkt. No. 62 (E-Discovery Order). The Parties agreed to, for example, specific limitations on written discovery requests, limitations on discovery of email and other forms of electronic correspondence, a limit of 10 party fact depositions per side, and limits on depositions of non-parties. *See* Dkt. Nos. 51, 62. The Parties also proposed, and the Court entered, a Protective Order. *See* Dkt. No. 45.

***Fact Discovery***. As of the stay entered on March 30, 2026 (Dkt. No. 93), there were five weeks remaining before the fact discovery deadline then in effect; the parties had previously conferred over an extension to the case schedule, and reserved the right to seek to extend the remaining deadlines. As of the stay, the Parties had substantially completed document discovery and conducted one fact witness deposition permitted by the stipulation. *See* Dkt. No. 87 (First Amended Docket Control Order) at 3 (setting May 8, 2026 fact discovery cut-off). In the weeks before the stay, both Parties also had served written discovery requests for which the Parties now propose new response deadlines in Section XV below.

***Discovery Disputes***. The parties have four pending discovery disputes, which are described in Section IV(a).

## IX. Class Actions

This is not a class action case.

## X. Related Cases

This Court ordered this case related to *Arcell v. Google LLC*, No. 22-cv-02499-RFL (N.D. Cal.) and *Crowell v. Google LLC*, No. 25:cv-02775-RFL (N.D. Cal.). *See* Dkt. No. 110.

## XI. Relief

### A. Branch's Statement

Branch seeks to recover damages for the harm caused by Google's anticompetitive conduct, in an amount to be proven at trial. Branch seeks to recover lost profits damages, and the calculation of Branch's damages will be the subject of expert evidence and disclosed in accordance with the Court's schedule. Branch also seeks to recover exemplary damages under California and Texas law and trebling under the antitrust laws. Branch also seeks to recover costs, pre- and post-judgment

interest, and all other available relief. Branch also seeks the declaratory and injunctive relief set out in its Complaint. *See* Dkt. 1 at 106.

**B. Google's Statement**

Branch is not entitled to any of the damages it seeks in the Complaint or any other relief, and has not identified in its Complaint or otherwise what injunctive relief it seeks.

## XII. Settlement and ADR

The Parties previously agreed to select the Honorable Layn Phillips, United States District Judge (Retired), as their mediator. The district court in Texas set a mediation deadline of July 27, 2026, after the close of fact discovery. A new mediation deadline is included in the proposed schedule below (Section XV).

## XIII. Other References

The Parties do not seek reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XIV. Narrowing of Issues

***Branch's Position***: Before or in connection with summary judgment, Branch will ask the Court to decide the preclusive effect of certain findings against Google in *U.S. v. Google LLC*, No. 20-cv-03010-APM (D.D.C.) and *Epic Games, Inc. v. Google LLC*, No. 3:20-cv-05671-JD (N.D. Cal.). Branch relies on findings from both cases. This includes, for example, findings in *U.S. v. Google* that Google has monopoly power in the general search services market, and unlawfully maintained that power by engaging in anticompetitive conduct, including by using exclusive distribution agreements with restrictions on competing technology (such as Branch's Discovery), *see* Dkt. No. 1 ¶¶ 19, 29, 75, 78, 80, 84, 138, 175, 188-89; and (b) findings in *Epic Games* that Google unlawfully monopolized the Android app distribution market, *id*. ¶¶ 108, 116.

A court in this district has already held that Google is precluded from relitigating findings from *U.S. v. Google*. In *Yelp v. Google*, the court held that Google is precluded from relitigating various matters decided in *U.S. v. Google*, including "that Google has monopoly power in the general search services market." *Yelp, Inc. v. Google LLC*, No. 24-cv-06101, 2026 WL 1883619, at *14 (N.D. Cal. June 30, 2026); *see also In re Google Digital Advert. Antitrust Litig.*, 2025 WL

3012840, at *17 (S.D.N.Y. Oct. 27, 2025) (applying issue preclusion to findings from the DOJ's separate, successful enforcement action over Google's monopolization of the digital advertising market). Addressing the preclusive effect of these findings will help narrow the issues for trial.

As to Google's statement below that it intends to later file a motion for summary judgment on antitrust standing, Branch will oppose that motion. Google previously sought dismissal on standing grounds, and the district court denied Google's motion. *See* ECF No. 89 at 3-8 ("The Court finds that Branch has adequately pled antitrust standing for each market it outlines in its Complaint."). Branch sustained antitrust injury and has standing in each of the relevant markets and with respect to each of Branch's claims.

***Google's Position***: Google will oppose Branch's request and ask the Court to find, among other things, that Branch has not carried its burden in proving the necessary elements of issue preclusion; and the Court should decline to exercise its broad discretion to find any preclusive effect of prior findings. The cited findings about Google's monopoly power and conduct in the general search services market in *U.S. v. Google* are not entitled to preclusive effect because, among other reasons, that court found that Branch was not harmed in that market and any conduct related to it occurred outside that market. 747 F. Supp. 3d 1, 170 (D.D.C. 2024). And the findings from *Epic Games* on Google's monopoly power and conduct in the Android app distribution market are not entitled to preclusive effect because, among other reasons, Branch does not compete in that market, either.

Google will also move separately, before or in connection with summary judgment, to address certain legal deficiencies in Branch's claims, including with respect to the lack of antitrust standing described above.

## XV. Scheduling

The Parties request that the Court lift the stay ordered at Dkt. No. 93 and propose the following schedule:

| Event | Date |
|---|---|
| Deadline to serve responses to all pending discovery requests | Two weeks after stay is lifted |
| Deadline to rebrief the four previously filed motions consistent with this Court's procedures | September 23, 2026 |

| | |
|---|---|
| Deadline to file supplemental Case Management Statement | 60 days before close of fact discovery (see Standing Order at 4) |
| Deadline to notice depositions of fact witnesses | 30 days before close of fact discovery (see Standing Order at 4) |
| Deadline to complete the exchange of final privilege logs | 30 days before close of fact discovery |
| Deadline for fact discovery | December 18, 2026 |
| Deadline to designate experts and serve expert reports on issues where the Party bears the burden of proof | January 15, 2027 |
| Deadline to File Joint Letter Regarding Scheduling of ADR Proceeding | February 19, 2027 |
| Deadline to serve rebuttal expert reports | February 26, 2027 |
| Deadline for expert discovery | March 24, 2027 |
| Deadline to File Stipulation Setting a Briefing Schedule for Motions and Cross-Motions (see Standing Order at 7-8) | March 24, 2027 |
| Deadline to File Dispositive and *Daubert* motions | April 14, 2027 |
| Private mediation to be completed | June 25, 2027 |
| Hearing on Dispositive Motions | June 29, 2027 or a date set by the Court |
| Motions in Limine Due | 28 days before pretrial conference |
| Pretrial Conference | October 5, 2027 or a date set by the Court |
| Trial | November 1, 2027 |

## XVI. Trial

Branch has demanded a jury trial. Branch estimates that trial can be completed in seven days. Google estimates that a trial would likely take 2-3 weeks.

## XVII. Disclosure of Non-party Interested Entities or Persons

Branch and Google each filed certificates of interested entities under Civil Local Rule 3-15. Dkt. Nos. 101, 108. Branch did not disclose any conflict or interested parties other than the named parties. Dkt. No. 101. Google identified the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities that (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in the subject matter or in a party that could be substantially affected by the

outcome of this proceeding: (1) Google LLC; (2) XXVI Holdings Inc., Holding Company of Google LLC; and (3) Alphabet, Inc., Holding Company of XXVI Holdings Inc. Dkt. No. 108.

The parties also confirm that they have no disclosures to make pursuant to Local Rule 3-15(b)(2).

**XVIII. Professional Conduct**

All attorneys of record for Branch and Google confirm they have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**XIX. Other**

The Parties do not have any further issues to raise at this time.

Dated: September 2, 2026

By: */s/ Alex Kaplan*

Neal Manne (SBN 94101)
Alex Kaplan (*pro hac vice*)
Adam Carlis (*pro hac vice forthcoming*)
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Phone: (713) 651-9366
Fax: (713) 654-6666
nmanne@susmangodfrey.com
akaplan@susmangodfrey.com
acarlis@susmangodfrey.com

Kalpana Srinivasan (SBN 237460)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Phone: (310) 789-3100
Fax: (310) 789-3150
ksrinivasan@susmangodfrey.com

John Schiltz (*pro hac vice*)
Danielle Nicholson (SBN 325392)
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Phone: (206) 516-3880
Fax: (206) 516-3883
jschiltz@susmangodfrey.com
dnicholson@susmangodfrey.com

Zach Savage (*pro hac vice*)
Russell Rennie (*pro hac vice*)
Emily Portuguese (*pro hac vice*)
SUSMAN GODFREY L.L.P.
One Manhattan West

New York, NY 10001-8602
Phone: (212) 336-8330
Fax: (212) 336-8340
zsavage@susmangodfrey.com
rrennie@susmangodfrey.com
eportuguese@susmangodfrey.com

*Counsel for Plaintiff Branch Metrics, Inc.*

Dated: September 2, 2026

By: */s/ John E. Schmidtlein (with permission)*

John E. Schmidtlein (CSB # 163520)
Benjamin M. Greenblum (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
jschmidtlein@wc.com
bgreenblum@wc.com

Anne Johnson Palmer (CSB # 302235)
ROPES & GRAY LLP
One Maritime Plaza, Suite 1800
300 Clay Street
San Francisco, CA 94111
Tel: (415) 315-6300
Fax: (415) 315-6350
anne.johnsonpalmer@ropesgray.com
*Counsel for Defendant Google LLC.*

**FILER'S ATTESTATION**

I attest that each party whose signature appears on this document concurs in its contents.

*/s/ Alex Kaplan*
Alex Kaplan

**CASE MANAGEMENT ORDER**

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

Dated:

____________________________________
THE HONORABLE RITA F. LIN

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing document has been served on all current counsel of record on September 2, 2026 via CM/ECF.

*/s/ Alex Kaplan*
Alex Kaplan