WILLIAMS & CONNOLLY LLP
John E. Schmidtlein (SBN 163520)
Benjamin M. Greenblum (*pro hac vice*)
Alexander S. Zolan (*pro hac vice*)
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
jschmidtlein@wc.com
bgreenblum@wc.com
azolan@wc.com

ROPES & GRAY LLP
Matthew L. McGinnis (*pro hac vice*)
Kathryn Caldwell (*pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7567
matthew.mcginnis@ropesgray.com
kathryn.caldwell@ropesgray.com

Attorneys for Defendant
Google LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

BRANCH METRICS, INC.,

Plaintiff,

v.

GOOGLE LLC,

Defendant.

No. 3:26-cv-07544-RFL

**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION FOR LEAVE TO SEEK RECONSIDERATION OF THE DENIAL OF GOOGLE'S MOTION TO DISMISS REGARDING THE GENERAL SEARCH SERVICES MARKET**

Date: November 17, 2026
Time: 10:00 a.m.
Judge: Hon. Rita F. Lin
Dept: Courtroom 4, 17th Floor

# TABLE OF CONTENTS

Page(s)

NOTICE OF MOTION AND MOTION ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. STATEMENT OF ISSUES TO BE DECIDED ..... 2

III. BACKGROUND ..... 2

IV. ARGUMENT ..... 4

A. Applicable Law ..... 4

B. Branch Lacks Antitrust Standing in a General Search Services Market ..... 5

1. There Is No "Targeting" Exception to Antitrust Standing ..... 8

2. *Tessera* Does Not Support a "Target" Exception ..... 10

3. No Other Exception to the Market Participation Requirement Applies ..... 11

C. Without Standing in a General Search Services Market, Five of Branch's Claims Should Be Dismissed in Whole or in Part ..... 13

V. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbouds' McDonald's LLC v. McDonald's Corp.*, 2006 WL 1877247 (9th Cir. July 7, 2006)..... 9

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171 (9th Cir. 2016) ................................. 10

*AFMS LLC v. United Parcel Serv., Inc.*, 696 F. App'x 293 (9th Cir. 2017) ................................. 6

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*, 190 F.3d 1051 (9th Cir. 1999) ........... 6, 10, 11

*Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ............................................................................................ 5, 8, 10

*Bakay v. Apple, Inc.*, 2024 WL 3381034 (N.D. Cal. July 11, 2024)........................................... 13

*Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982)................................................... 11, 12

*Bourns, Inc. v. Raychem Corp.*, 331 F.3d 704 (9th Cir. 2003) ..................................................... 5

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993)........................ 10

*County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148 (9th Cir. 2001).............................. 13

*Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974 (N.D. Cal. 2010)......................... 13

*Dewan v. M-I, L.L.C.*, 2015 WL 3797462 (E.D. Cal. June 18, 2015) ....................................... 4, 5

*Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019 (N.D. Cal. 2015)............................................ 7, 13

*Fotobom Media, Inc. v. Google LLC*, 719 F. Supp. 3d 33 (D.D.C. 2024)............................... 7, 12

*Greenflight Venture Corp. v. Google LLC*, 2024 WL 4723121 (S.D. Fla. Nov. 8, 2024)........ 7, 12

*Helena World Chron., LLC v. Google LLC*, 2026 WL 787882 (D.D.C. Mar. 20, 2026) ............... 7

*Henderson Broad. Corp. v. Houston Sports Ass'n, Inc.*, 647 F. Supp. 292 (S.D. Tex. 1986)...... 13

*Hogan v. Amazon.com, Inc.*, 2025 WL 869202 (9th Cir. Mar. 20, 2025)...................................... 5

*In re Quarterdeck Off. Sys., Inc., Sec. Litig.*, 854 F. Supp. 1466 (C.D. Cal. 1994)........................ 2

*Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314 (5th Cir. 2009) ...................................... 11

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029 (N.D. Cal. 2012) .............. 5

*Korea Kumho Petrochemical v. Flexsys Am. LP*, 2007 WL 2318906 (N.D. Cal. Aug. 13, 2007) . 9

*Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291 (S.D. Cal. 2009) ........................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

*Mauia v. Petrochem Insulation, Inc.*, 2018 WL 6092726 (N.D. Cal. Nov. 21, 2018)............ 10, 11

*Nat'l Info. Servs., Inc. v. TRW, Inc.*, 1992 WL 715632 (D. Or. Sept. 9, 1992) ............................. 9

*Newton v. Thomason*, 22 F.3d 1455 (9th Cir. 1994) ....................................................................... 4

*Norris v. Hearst Tr.*, 500 F.3d 454 (5th Cir. 2007)........................................................................ 11

*Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302 (4th Cir. 2007)...................................................... 13

*Ore. Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957 (9th Cir. 1999) ........................................................................................................................ 12

*R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139 (9th Cir. 1989) ................. 9, 13

*Relevant Grp., LLC v. Nourmand*, 116 F.4th 917 (9th Cir. 2024) ............................................... 13

*Sacramento Valley, Chapter of the Nat'l Elec. Contractors Ass'n v. Int'l Bhd. of Elec. Workers, Loc. 340*, 888 F.2d 604 (9th Cir. 1989)......................................................................... 9

*Sensory, Inc. v. Google LLC*, 2026 WL 2017536 (D.D.C. July 13, 2026) .................................... 6

*Surf City Steel, Inc. v. Int'l Longshore & Warehouse Union*, 2015 WL 12655708 (C.D. Cal. Apr. 6, 2015) ......................................................................................................................... 9

*Synopsys, Inc. v. Siemens Indus. Software Inc.*, 2023 WL 6385609 (N.D. Cal. Sept. 14, 2023).... 4

*Tessera, Inc. v. Micron Tech., Inc.*, 2005 WL 1661106 (E.D. Tex. July 14, 2005)............ 3, 10, 11

*Trudeau v. Bockstein*, 2008 WL 541158 (N.D.N.Y. Feb. 25, 2008) ........................................... 11

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*, 2010 WL 9934741 (N.D. Cal. Dec. 21, 2010)....... 5

*United States v. Google*, 747 F. Supp. 3d 1 (D.D.C. 2024) .................................................. 1, 7, 8

*Vinci v. Waste Mgmt., Inc.*, 1994 WL 478163 (N.D. Cal. Aug. 25, 1994) .................................... 9

*Vinci v. Waste Mgmt., Inc.*, 80 F.3d 1372 (9th Cir. 1996) ...................................................... 9, 12

**Rules**

N.D. Cal. Local Rule 7-9 ........................................................................................... 1, 2, 4, 5

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on November 17, 2026,[1] at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Rita F. Lin, Defendant Google LLC ("Google") will, and hereby does, move this Court for an order granting leave under Local Rule 7-9 to move for reconsideration of the denial of Google's motion to dismiss Plaintiff Branch Metrics' ("Branch") claims pertaining to an alleged general search services market. The transferor court held that Branch had antitrust standing in that market "under a direct target theory," which is contrary to the law of antitrust standing in this Court. As a matter of law, Branch has no basis to proceed past the pleading stage on such a claim, as opposed to proceeding on claims in relevant markets in which Branch at least alleges it competes.

The general search services claims should therefore be dismissed. This motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities, and any argument at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

To establish antitrust standing, Branch must plead facts establishing that it participates in each alleged relevant market in which it asserts claims. Several of Branch's claims turn on an alleged relevant market for general search services, which Branch defines as services that "allow consumers to find responsive information on the internet by entering keyword queries in a general search engine such as Google, Bing, or DuckDuckGo." Compl. (Dkt. 1) ¶ 71.

Branch borrowed its alleged general search services relevant market from the District Court for the District of Columbia's findings in *United States v. Google*, yet that court held that Branch is not a general search engine and does not compete in the general search services market. *Compare* Compl. ¶¶ 71-76 *with* 747 F. Supp. 3d 1, 109-16 (D.D.C. 2024); *see also* Compl. ¶ 75 (citing and incorporating the opinion). Tellingly, Branch's complaint omits itself from the list of general search engines in the market. *See, e.g.*, Compl. ¶ 77. The ruling denying

[1] Google conferred with Branch to confirm its availability on this proposed hearing date, per the Court's rules.

the motion to dismiss, from which Google seeks reconsideration here, agreed that "Branch Discovery is not a general search engine," but nonetheless allowed Branch's general search services claims to survive solely "under a direct target theory." Dkt. 89 at 4.

But there is no "direct target" exception to the market participation requirement for antitrust standing.[2] Google therefore seeks leave to move for reconsideration of the denial of Google's motion to dismiss Branch's claims regarding the general search services market.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Should Google be granted leave to seek reconsideration of the denial of its motion to dismiss Branch's complaint to the extent it asserts claims regarding an alleged general search services market?

## III. BACKGROUND

Branch filed its Complaint on January 31, 2025, in the Marshall Division of the U.S. District Court for the Eastern District of Texas. Compl. Branch alleged that its Discovery Search product "works by running user search queries across deep-linked, indexed content from mobile apps," *id.* ¶ 46, rather than across web content (e.g., webpages). "Discovery Search offers an alternative and enhancement to web-only searching and thus threatens to divert mobile device users (and advertisers) away from traditional web-based search, which is dominated by Google, and towards app content search," *id.* ¶ 16, a separate market that Branch pleads.[3]

Branch claims that "Google's anticompetitive conduct has foreclosed Branch Discovery Search from being integrated, in whole or part, on billions of Android devices distributed around the globe" and alleges harm in four "separate and distinct" product markets: general search

---

[2] This brief focuses on Ninth Circuit law, but as discussed herein, there is no "direct target" exception under Fifth Circuit law either. Google discusses arguments previously presented in the transferor court to demonstrate that court's failure to consider such arguments and to seek reconsideration in this Court as necessary. *See In re Quarterdeck Off. Sys., Inc., Sec. Litig.*, 854 F. Supp. 1466, 1470 (C.D. Cal. 1994) ("[T]he purpose of Local Rule 7.16," which was similar to this Court's L.R. 7-9, "is [not] to prohibit courts from reconsidering arguments previously made before the court, but rather to justify a court's refusal to hear such arguments when they have already been given full consideration."); *see also* L.R. 7-9.

[3] Because Google seeks reconsideration of a ruling at the 12(b)(6) stage, well-pleaded allegations in the Complaint are assumed as true solely for purposes of this motion.

services, Android application search services, Android app distribution, and search advertising. *See*, *e.g.*, *id*. ¶¶ 51, 246. "General search services allow consumers to find responsive information on the internet by entering keyword queries in a general search engine such as Google, Bing, or DuckDuckGo." *Id*. ¶ 71. Branch alleged that "only two U.S. firms — Google and Microsoft — maintain a comprehensive search index," a "fundamental[] component of a general search engine," and that there "are only four meaningful general search engines in this market: Google, Bing, Yahoo!, and DuckDuckGo." *Id*. ¶¶ 77, 81. Branch expressly distinguished "application search products, like Branch Discovery Search," alleging they are "separate and distinct" from general search service products like "Google Search." *Id*. ¶ 360.

Google moved to transfer to this Court on April 4, 2025, because the case had no connection to the Eastern District of Texas. Dkt. 19. On April 11, 2025, Google also moved to dismiss, including on the ground that Branch did not have antitrust standing in a general search services market. Dkt. 25 at 8-10. Branch opposed, arguing, *inter alia*, that because Google allegedly "targeted Branch as a competitive threat to Google Search," it "has antitrust standing to challenge Google's monopolization of the general search services market." Dkt. 37 at 13-14.

Six months later, on October 22, 2025, the district court denied Google's motion to transfer. Dkt. 67. Google petitioned for mandamus and on February 25, 2026, the Fifth Circuit ordered that the petition be expedited and assigned to a panel of judges. *In re Google*, No. 25-40788 (5th Cir. Feb. 25, 2026), Dkt. 48-1. On March 19, 2026, the district court denied the motion to dismiss, acknowledging that "Branch Discovery is not a general search engine and Branch does not assert as such," but adopting Branch's "direct target" theory: "Branch has properly alleged it has standing in the general search services market at least under a direct target theory." Dkt. 89 at 4. The opinion cited a decision from that jurisdiction (*Tessera*, discussed *infra*) that purportedly grounded antitrust standing under the "direct target" theory. *Id*. at 4-5.

Shortly after denying the motion to dismiss, on March 30, 2026, with the mandamus petition still pending, the district court stayed the case "until subsequent Order of this Court, to be issued after the resolution of Google's petition for writ of mandamus as to venue." Dkt. 93. On

April 7, 2026, the Fifth Circuit granted mandamus and directed transfer to this Court. *In re Google*, No. 25-40788 (5th Cir. Apr. 7, 2026), Dkt. 60. Transfer was delayed by Branch's petition for rehearing en banc, but was effectuated on July 22, 2026. Dkt. 95. After various filings on relatedness in several pending cases in this district, this Court granted Google's motion to relate. Dkt. 110. On September 2, 2026, the parties requested that the stay be lifted, which the Court ordered on September 9 (Dkt. 131), and this motion followed shortly thereafter.

## IV. ARGUMENT

Google respectfully requests leave to seek reconsideration of the ruling that Branch has antitrust standing to pursue claims regarding a general search services market on a "direct target" theory.

### A. Applicable Law

In this Court, a diligent[4] litigant is granted leave to move for reconsideration where, *inter alia*, it establishes a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." L.R. 7-9(b)(3). Google moves for reconsideration because the prior court erred as a matter of law in grounding standing on a direct target theory.

As set forth below, the motion to dismiss was wrongly decided on this point regardless of which circuit's law applies. But were Branch to defend the prior court's ruling on the basis of case law binding courts in the Fifth Circuit or the Eastern District of Texas, that would not avail, because that case law is no longer applicable. When a case is transferred from another circuit, the federal law applicable to the case changes to the transferee court's law. *Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir. 1994) ("when reviewing federal claims, a transferee court in this circuit is bound only by our circuit's precedent"); *see also Dewan v. M-I, L.L.C.*, 2015 WL 3797462, at *7 (E.D. Cal. June 18, 2015) ("in federal question cases only when the law of the United States is specifically intended to be geographically non-uniform should the transferee court apply the circuit

[4] Accounting for the stay entered following denial of the motion to dismiss, less than two weeks have passed since that ruling. *See Synopsys, Inc. v. Siemens Indus. Software Inc.*, 2023 WL 6385609, at *3 (N.D. Cal. Sept. 14, 2023) ("taking one month to file a motion for reconsideration was reasonably diligent").

precedent of the transferor court"). This case is now governed by "Ninth Circuit jurisprudence." *Dewan*, 2015 WL 3797462, at *7; *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, 2010 WL 9934741, at *3 (N.D. Cal. Dec. 21, 2010) ("the Eastern District of Texas [rules are] no longer controlling after the Texas Federal Court transferred the case to this district"). Google accordingly relies below on the case law binding in the Ninth Circuit and in this Court. And the availability of that case law on this motion further counsels in favor of leave, because "a material difference in fact or law exists *from that which was presented to the Court* before entry of the interlocutory order for which reconsideration is sought" L.R. 7-9(b)(1) (emphasis added); the parties' prior briefing relied predominantly on Fifth Circuit law.

Finally, the Court can also grant reconsideration even where Local Rule 7-9 is not technically met: "The Court's local rules are meant to streamline the administration of justice" and "do nothing to limit the Court's inherent procedural power to reconsider, rescind, or modify an interlocutory order." *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1035 (N.D. Cal. 2012) (citation omitted).

### B. Branch Lacks Antitrust Standing in a General Search Services Market

The Supreme Court held in *Associated General Contractors of California, Inc. v. California State Council of Carpenters* ("*AGC*"), that a plaintiff lacks antitrust standing if it "was neither a consumer nor a competitor in the market in which trade was restrained." 459 U.S. 519, 539 (1983). Even where the "complaint does allege a causal connection between an antitrust violation and harm to the [plaintiff] and further alleges that the defendants intended to cause that harm," that is insufficient. *Id.* at 537.

Consistent with *AGC*, the Ninth Circuit consistently has applied a "market participation requirement" which "requires the plaintiff to have suffered its injury in the market where competition is being restrained." *Hogan v. Amazon.com, Inc.*, 2025 WL 869202, at *1-2 (9th Cir. Mar. 20, 2025) (citation omitted). *See also*, *e.g.*, *Bourns, Inc. v. Raychem Corp.*, 331 F.3d 704, 711 (9th Cir. 2003) ("Only an actual competitor or one ready to be a competitor can suffer antitrust injury."); *AFMS LLC v. United Parcel Serv., Inc.*, 696 F. App'x 293, 294 (9th Cir.

2017) ("To establish antitrust standing, an antitrust plaintiff must participate in the same market as the alleged malefactors.") (citation omitted); *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*, 190 F.3d 1051, 1057 (9th Cir. 1999) ("Antitrust injury requires the plaintiff to have suffered its injury in the market where competition is being restrained."); *see also id.* ("While consumers and competitors are most likely to suffer antitrust injury, there are situations in which other market participants" qualify, *e.g.*, "indirect purchasers," "potential entrants," "suppliers," "licensors and landlords," and "dealers").

Unlike its allegations that it actually competes in its other three relevant markets, the core of Branch's general search services claims is that "market participants *perceive* Discovery Search as a competitor in the general search services market." *Compare* Compl. ¶ 85 (general search services) (emphasis added), *with id*. ¶¶ 65 (Android app search services), 117 (Android app distribution), and 139 (search advertising). Branch omitted itself from the list of firms that compete in the alleged general search services market, *id*. ¶ 77, and alleged that products therein, including "Google Search[,] *are separate and distinct products* from alternative search products, including application search products, like Branch Discovery Search." *Id*. ¶ 360 (emphasis added). "Perception" by market participants is no substitute for the plaintiff's actual *participation* in that market; *i.e.*, the analysis does not turn on what people think, it turns on which markets the plaintiff's product actually competes in. What companies other than Branch (whether Google, or its Android partners) allegedly "perceive" about what market Branch participates in does not make Branch a market participant.

Branch is not the first private plaintiff to attempt to bring general search services claims against Google despite not participating in that market. Claims in that market routinely fail at the Rule 12(b)(6) stage on standing grounds. *See Sensory, Inc. v. Google LLC*, 2026 WL 2017536, at *6, *8 (D.D.C. July 13, 2026) (dismissing claims "insofar as they relate to the general search services" market, explaining that "a plaintiff who suffers injury in one market can[not] claim antitrust injury in a different market simply because the purported injuries can be traced to the same anticompetitive conduct. The plaintiff must still be a participant in that market

in which it alleges an injury."); *Helena World Chron., LLC v. Google LLC*, 2026 WL 787882, at *7-9 (D.D.C. Mar. 20, 2026) ("The harms Plaintiffs *themselves* allegedly suffer are not within the general search services market at all. By Plaintiffs' own description, the general search services market consists of 'general search engines, which are "one-stop shops" consumers can use to search the internet for answers to a wide range of queries,'" which plaintiffs did not plead themselves to be"); *Fotobom Media, Inc. v. Google LLC*, 719 F. Supp. 3d 33, 46 (D.D.C. 2024) ("The court accepts that, in some instances, Keyboard+ will provide a more user-friendly way to get to limited search results or a mobile application. But that functionality does not make it reasonably interchangeable with a general search engine. Keyboard+ therefore is not plausibly a nascent competitor to Google in the market for general search services."); *Greenflight Venture Corp. v. Google LLC*, 2024 WL 4723121, at *4 (S.D. Fla. Nov. 8, 2024) ("The Plaintiff has not sufficiently alleged that it is a market participant in the general search services market, nor has the Plaintiff alleged any other basis for standing. The Plaintiff's Count I is dismissed for lack of standing."). *See also Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1023, 1027-28 (N.D. Cal. 2015) ("Plaintiffs allege that they suffered antitrust injury in the form of supracompetitive pricing in Android phones, which is not the market in which the alleged anticompetitive conduct occurred," *i.e.*, the "United States market for general search").

Branch pleads that it alleges the same general search services market as in *U.S. v. Google*, and its Complaint relies heavily on that case. *See*, *e.g.*, Compl. ¶¶ 19, 75. But that case squarely rejects Branch being in this alleged market, ultimately holding that whatever "chilling effect" the challenged Google agreements had on the adoption of Branch, it "did not occur in the general search services market." *U.S. v. Google*, 747 F. Supp. 3d at 170. In so finding, the court relied on testimony from Branch's founder and former CEO that "[u]nlike a GSE, Branch's product does not index the web," and "that Branch's technology does not 'conflict with or overlap with web search.'" *Id.* at 37, 170. The court also considered that Branch describes itself as "totally different and distinct from Google search, [that] there is zero impact on Google search traffic after implementing Branch," and "outlining significant differences between general web

search and Branch." *Id.* at 170.

These differences are fundamental to Branch's posture *outside* of the general search services market. Whereas Branch pleads that its product does *not* rely on "indexed web content," the court that defined the market that Branch relies upon held that doing so was a "crucial piece" of competing in the general search services market. *Compare* Compl. ¶ 98, *with U.S. v. Google*, 747 F. Supp. 3d at 38-39. As that court explained, this was "foundational" and "fundamental" to being a competitor in the general search services market. *Id.* at 90, 123. Because Branch concededly does not index the web, it instead alleges that its Android app content search product–despite "the differences in their respective universes of content," Compl. ¶ 74–would have ridden a "shift in consumer digital activity to mobile devices and app content that does not reside on the web." *Id.* ¶¶ 1, 45, 93. Those conclusions, however, gloss over the divide that Branch premises its claims upon: "Google Search are separate and distinct products from . . . application search products[] like Branch Discovery Search." *Id.* ¶ 360. And that division confirms on the face of Branch's Complaint that it does not have antitrust standing in a general search services market.

**1. There Is No "Targeting" Exception to Antitrust Standing**

The prior court's ruling denying the motion to dismiss held that Branch pleaded standing "under a direct target theory." Dkt. 89 at 4. It highlighted Branch's allegations that "Google specifically targeted Branch as a competitive threat," and "that other parties, such as T-Mobile and Samsung, have also recognized that," absent Google's alleged conduct, "Discovery Search would be a competitive threat to Google Search." *Id.* at 4-5. This was clearly erroneous.

The law does not recognize a "direct target" exception to the market participation requirement. *AGC* was clear: "allegations of consequential harm resulting from a violation of the antitrust laws," *even when "buttressed by an allegation of intent to harm"* are insufficient to confer standing. *AGC*, 459 U.S. at 545 (emphasis added). Consistent with *AGC*, the Ninth Circuit repeatedly has held that "[a]n allegation of intentional injury is not a panacea that will enable any complaint to withstand a motion to dismiss" if the plaintiff "was not in the [relevant]

market and [plaintiff] suffered no identifiable injury in the [relevant] market." *R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 146, 150 (9th Cir. 1989) (citation omitted); *see also Abbouds' McDonald's LLC v. McDonald's Corp.*, 2006 WL 1877247, at *1 (9th Cir. July 7, 2006) (finding "Abbouds' McDonald's lacks antitrust standing" despite argument "they have standing because the bid-rigging conspiracy included conduct aimed at excluding them, the competitor, from the market in question."); *Sacramento Valley, Chapter of the Nat'l Elec. Contractors Ass'n v. Int'l Bhd. of Elec. Workers, Loc. 340*, 888 F.2d 604, 609 (9th Cir. 1989).

District courts have routinely applied these precedents to reject a "targeting" exception to the market participation requirement. *See Vinci v. Waste Mgmt., Inc.*, 1994 WL 478163, at *3 (N.D. Cal. Aug. 25, 1994), *aff'd*, 80 F.3d 1372 (9th Cir. 1996) (plaintiff argued he "should be given individual antitrust standing because Waste Management's practices were targeted directly at him and were intended to put [him] out of business. This argument lacks merit."); *Korea Kumho Petrochemical v. Flexsys Am. LP*, 2007 WL 2318906, at *3 (N.D. Cal. Aug. 13, 2007) ("To establish antitrust injury, it is not sufficient to allege that the conspirators merely 'targeted' Plaintiff or otherwise intended to harm or schemed against it."); *Surf City Steel, Inc. v. Int'l Longshore & Warehouse Union*, 2015 WL 12655708, at *7 (C.D. Cal. Apr. 6, 2015) (argument that being "the target of Defendants' unlawful conduct" was insufficient for "standing" because plaintiffs "are not" participants "within the relevant market."). For the same reason, courts reject the argument that a plaintiff is "entitled to standing because [defendant] perceived them as competitors." *Nat'l Info. Servs., Inc. v. TRW, Inc.*, 1992 WL 715632, at *6 (D. Or. Sept. 9, 1992), *aff'd*, 52 F.3d 334 (9th Cir. 1995). Whatever remedies one company may have for being "targeted" by another, that remedy does not lie in antitrust unless, *inter alia*, both companies participate in the same relevant market.

For the same reason, however vividly Branch would describe Google's alleged intent to harm Branch, that simply does not state an antitrust claim. "Competitors are not required to engage in a lovefest," and "intent to harm a competitor" is not "the marker of antitrust liability."

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1184 (9th Cir. 2016). *See also Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225 (1993) ("Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws."). The market participation requirement therefore means that the "antitrust laws do not provide a remedy to every party injured by unlawful economic conduct." *Am. Ad Mgmt.*, 190 F.3d at 1055.

Google raised *AGC* and its progeny in its motion to dismiss. *See, e.g.*, Dkt. 25 at 6-10. The court did not address these cases, instead relying on *Tessera*. *See* Dkt. 89 at 3-5; *see also infra* Section IV(B)(2). The transferor court's failure to even mention Google's argument justifies reconsideration here. *Mauia v. Petrochem Insulation, Inc.*, 2018 WL 6092726, at *4 (N.D. Cal. Nov. 21, 2018) (granting reconsideration because "it appears that the Court manifestly failed to consider these two dispositive legal arguments"). And inasmuch as Ninth Circuit precedent on this issue was not binding on (or cited by) the prior court, that further supports leave for reconsideration. *See supra*, Section IV(A).

**2. *Tessera* Does Not Support a "Target" Exception**

The transferor court relied on *Tessera, Inc. v. Micron Tech., Inc.*, in denying Google's motion to dismiss. Dkt. 89 at 4 *citing* 2005 WL 1661106 (E.D. Tex. July 14, 2005). *Tessera* did not, and could not, supplant the market participation requirement, but instead it *added* a targeting requirement where the antitrust plaintiff participates in the relevant market only as a licensor.

In *Tessera*, the plaintiff pleaded two markets. The court held that the plaintiff failed to adequately plead standing in the first market. 2005 WL 1661106 at *3. The plaintiff was a market participant in the second market, but only as a licensor. *Id.* at *4. Because the plaintiff participated in the second market as a licensor, rather than as a supplier, the court imposed the *additional* requirement that, "as a licensor, Tessera may recover for antitrust violations only if the defendant's activities were directed at it." *Id*. Thus, *Tessera* did not *remove* the market participation requirement but instead *added* an additional requirement inapplicable here. And *Tessera* left no doubt: "[t]he Fifth Circuit requires the plaintiff to be a member of the market in

which the relevant antitrust activity was taking place." *Id*. at *2.[5] *Tessera* could not stand for the proposition that being a "target" obviates the need to be a participant in the relevant market, as the plaintiff *did* participate in the relevant market as a licensor. *See also Am. Ad Mgmt.*, 190 F.3d at 1057 ("[w]hile consumers and competitors are most likely to suffer antitrust injury, there are situations in which other market participants can suffer antitrust injury," including "licensors").

Google raised that *Tessera* specifically reiterated and applied the market participation requirement. *See* Dkt. 39 at 7-8. Here as well, because "there is no mention of [Google's] argument" in that respect, reconsideration is warranted. *Mauia*, 2018 WL 6092726 at *4.

**3. No Other Exception to the Market Participation Requirement Applies**

"[D]irect target theory" was the exclusive basis for the holding that Branch had alleged antitrust standing in the general search services market; the court did not address other asserted grounds. Dkt. 89 at 3-5. Should Branch defend the prior court's ruling on alternative grounds, Google respectfully submits that that would only confirm the need for reconsideration. *See*, *e.g.*, *Trudeau v. Bockstein*, 2008 WL 541158, at *4 (N.D.N.Y. Feb. 25, 2008) ("the better approach is to grant the motion for reconsideration, and then proceed to consider other grounds"). In an abundance of caution, however, Google briefly addresses Branch's alternative standing theories (*see* Dkt. 89 at 3-4) here.

*First*, Branch does not fall within the "inextricably intertwined" exception of *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982). The Ninth Circuit views that doctrine as an exceedingly "narrow exception" based on the particular insurance arrangement at issue in *McCready*, and it has extended the doctrine beyond those facts essentially only to certain terminated employees, which is of no applicability here. *Am. Ad Mgmt.*, 190 F.3d at 1057 n.5;

---

[5] *See also Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 319 (5th Cir. 2009) ("the focus of remedies available under federal antitrust laws is principally upon consumers or competitors affected by anticompetitive conduct"); *Norris v. Hearst Tr.*, 500 F.3d 454, 466 (5th Cir. 2007) ("Plaintiffs are neither consumers (buyers of advertising, or users of advertising such as subscribers) nor competitors (sellers of advertising) in the relevant market. Plaintiffs have not suffered antitrust injury.").

*Vinci v. Waste Mgmt., Inc.*, 80 F.3d 1372, 1376 (9th Cir. 1996) (noting only "a limited exception to the general [market participant] rule that a terminated employee lacks antitrust standing."). The Ninth Circuit also has clarified that "the broad language [] used in *McCready* was simply a paraphrase of the antitrust laws and added nothing to the even broader language that the statute itself contains," and that the Supreme Court later clarified in *AGC* that "the actual plaintiff in *McCready* was *directly* harmed by the defendants' unlawful conduct" in any case. *Ore. Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 967 (9th Cir. 1999); *see also id.* ("The Court did *not* hold that there is no "consumer" or "market participant" requirement."). *AGC*, as the Ninth Circuit noted, confirmed that *McCready* does not offer an end-run around the market participation requirement. *See also Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1301 (S.D. Cal. 2009) ("The simple invocation of the phrase 'inextricably intertwined' will not allow a plaintiff to avoid the fundamental requirement for antitrust standing that he or she have suffered any injury of the type—almost exclusively suffered by competitors—that the antitrust laws were intended to prevent.") (cleaned up). More specifically, courts have consistently rejected attempts to establish antitrust standing under *McCready* for general search services claims. *See*, *e.g.*, *Fotobom*, 719 F. Supp. 3d at 47-48 ("Keyboard+'s alleged injury is not 'inextricably intertwined' with harm to competition in the general search services market."); *Greenflight*, 2024 WL 4723121, at *4 (rejecting plaintiff's standing for "the general search services market" based on "inextricably intertwined" theory).

*Second*, Branch does not plausibly allege to have been preparing to enter the general search services market: Branch did not intend to develop a "comprehensive search index," but concedes that is a "fundamental[] component of a general search engine," Compl. ¶ 81, that would allow "consumers . . . to access an extremely large and diverse volume of information *across the internet*," *id.* ¶ 72 (emphasis added). Branch intended only to "return search results . . . for specific content *within an app*," *id.* ¶ 10 (emphasis added). *See also id.* ¶ 45. Whatever that portends for Branch's ability to prove standing in its alleged market for *Android application*

*search services*, the first market pleaded in its Complaint, it does not plausibly plead standing in general search services.

*Third*, Branch does not achieve standing in general search services by pleading that its product allegedly "would have lowered the barriers to entry for other competitors" in that market. *Id.* ¶ 129. Branch has previously advanced this argument based on a Fourth Circuit case, *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302 (4th Cir. 2007). That argument is both (1) inconsistent with the market participation requirement, and (2) rejected by courts in this District. *Novell* is "from another circuit, and is factually distinguishable" because "it found that there was no better situated party to bring the antitrust claims." *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 992 (N.D. Cal. 2010). Here, by contrast, Branch has specifically alleged (Compl. ¶ 77) that there are other participants in the general search services market other than Google, such as Microsoft. *See also Bakay v. Apple, Inc.*, 2024 WL 3381034, at *7 (N.D. Cal. July 11, 2024) (similarly rejecting application of *Novell*); *Feitelson*, 80 F. Supp. 3d at 1028 (that plaintiffs promise to improve "innovation and consumer choice—is equally deficient" for antitrust standing).

### C. Without Standing in a General Search Services Market, Five of Branch's Claims Should Be Dismissed in Whole or in Part

"[M]anifest injustice would occur should the prior decision be allowed to stand" when it is "clearly erroneous." *Relevant Grp., LLC v. Nourmand*, 116 F.4th 917, 927 (9th Cir. 2024). Antitrust standing is "an essential element of the plaintiff's case," and if it "is missing" then "the plaintiff's case fails." *R.C. Dick Geothermal*, 890 F.2d at 145. The analysis for Branch's state law claims under California and Texas[6] antitrust law track the analysis under federal antitrust law. *See Henderson Broad. Corp. v. Houston Sports Ass'n, Inc.*, 647 F. Supp. 292, 298 (S.D. Tex. 1986) (Texas); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001) (California). Five of Branch's fifteen claims seek to recover, in whole or in part, based on

[6] Since transfer, Google has asked whether Branch will proceed on its Texas state law claims, despite the lack of any material connection to that state. Google understands that Branch is still considering that issue.

purported injury in a general search services market:

- Count VI, for monopolization of the general search services market, should be dismissed in its entirety;
- Counts I, XIII, and XIV should be dismissed to the extent they claim restraints of trade in the general search services market;
- Count III, for tying, should be dismissed to the extent it claims injury in a tied product market for general search services.
- Counts X, XI, and XII are additional state law analogues that should likewise be dismissed to the extent Branch claims it was harmed in a market for general search services.

## V. CONCLUSION

Google respectfully submits that the Court should grant it leave to move to reconsider the denial of Google's motion to dismiss claims regarding the general search services market, specifically with respect to Counts I, III, VI, X, XI, XII, XIII, and XIV.

DATED: September 11, 2026

By: /s/ *John E. Schmidtlein*

WILLIAMS & CONNOLLY LLP
John E. Schmidtlein
jschmidtlein@wc.com

Attorneys for Google LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system on this 11th day of September, 2026.

/s/ *John E. Schmidtlein*

John E. Schmidtlein